UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

COLLEEN GINOP,

        Plaintiff,                  Case No. 2:16-cv-73

v.                                     HON. TIMOTHY P. GREELEY

CAROLYN W. COLVIN,
ACTING COMMISSIONER OF
SOCIAL SECURITY,

        Defendant.
_____/

**OPINION**

In May 2013, plaintiff Colleen Ginop filed an application for disability insurance benefits.  See Transcript of Administrative Hearing at PageID.146-161.  Plaintiff alleges that she became disabled due to hand, head, and body tremors, heart murmur, anxiety, and depression.  Plaintiff claimed an onset date of September 24, 2010.  Plaintiff's insured status expired on September 30, 2012.  PageID.38.  Plaintiff's application was denied initially and Plaintiff requested an administrative hearing before an Administrative Law Judge (ALJ).  ALJ Brent C. Bedwell held a hearing on May 6, 2015.  PageID.48-79.   The ALJ denied Plaintiff's claim on June 5, 2015.  The ALJ found that Plaintiff was not under a "disability" pursuant to the Social Security Act (20 C.F.R. § 404.1520(c)).  PageID.36-42.  The ALJ's decision became the agency's final decision when the Appeals Council denied plaintiff's request for review.  PageID.25-30.

Plaintiff now seeks judicial review of the agency's final decision denying her request for disability benefits.[1]

At the hearing, Plaintiff was represented by attorney Justin Drilich. PageID.49, 240. Plaintiff and Vocational Expert Alan Noll testified. (See PageID.235 for qualifications of vocational expert Alan Noll). Plaintiff was born on January 12, 1957, has a high school degree, and attended college. PageID.54. Plaintiff has a driver's license and has no problems driving. PageID.55. Plaintiff worked as a bookkeeper, which involved using a cash register and computer, filling out forms, writing checks, counting money, and dealing with customers. Plaintiff left that position in 2006, after a family hostile takeover of the business, and after she was told that the owners did not like her tremors. *Id*. Plaintiff did not work in 2007. Plaintiff earned some income in 2008, but does not recall doing anything in 2008. PageID.56. After the bookkeeping job ended, Plaintiff took care of her mother until she passed away in mid-2007. *Id*. Then she took care of her father until she was unable to do so. *Id.*

Plaintiff stated that she shakes so bad at times that she cannot use a keyboard, cannot apply make-up, cannot hook jewelry, and cannot properly input a PIN number sometimes while shopping. PageID.57. She is right handed, and the shaking is worse in her left hand. *Id.* Plaintiff states that she has been ridiculed for the tremors and asked if she is diabetic or on drugs. *Id.* She took medication for anxiety that helped her go out in public, but sometimes she just felt numb. PageID.58. At some point in 2010, she discontinued her anxiety medication because all it did was make her sleep. *Id*.

During that time period, she was able to cook, but needed assistance in cutting food due to her tremors. PageID.59. Plaintiff was able to take care of her personal needs, such as

---

[1] Both parties consented to proceed before a Magistrate Judge on June 14, 2016.

2

showering and bathing, make simple foods, do laundry, perform household chores such as cleaning and shopping, drive, read, garden, pay bills, and visit with friends. PageID.59-60. However, Plaintiff stated that she did not drive often. PageID.61. Sometimes her tremors limited her ability to complete these tasks. PageID.62. Plaintiff explained that the shaking comes and goes at any time. PageID.63. Most of the time she was unable to use a button or a zipper. *Id*. She visited the grocery store about once a month. PageID.63-64. She was able to sit for about an hour before she had to stand. PageID.64. She could stand in one area for about fifteen minutes before she would get frustrated due to her tremors. PageID.64-65. She could walk about fifty yards before her heart rate would race and was told by her cardiologist to slow down. PageID.65. She could lift her grandson who was about twelve pounds, but could not lift him repetitively. *Id*.

Plaintiff was able to sleep three or four hours at time, but never experienced tremors while sleeping. PageID.66-67. She was able to kneel to the floor, but would not have been able to return to a standing position without assistance. PageID.67. She could clean dishes, but her tremors would cause her to clang them together sometimes, causing breakage. PageID.68. She could fish with the assistance of her son. *Id*.

The findings of the ALJ are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is defined as more than a mere scintilla of evidence but "such relevant evidence that a reasonable mind might accept as adequate to support a conclusion." *Jones v. Sec'y, Human and Health Serv.*, 945 F.2d 1365, 1369 (6th Cir. 1991). The ALJ's decision cannot be overturned if sufficient evidence supports the decision regardless of whether evidence also supports a contradictory conclusion. *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003). This Court must affirm the ALJ's findings if sufficient evidence supports the decision even if evidence supports an alternative conclusion.

The ALJ must employ a five-step sequential analysis to determine if Plaintiff is under a disability as defined by the Social Security Act. *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004). If the ALJ determines Plaintiff is or is not disabled under a step, the analysis ceases and Plaintiff is declared as such. 20 C.F.R § 404.1520(a). The ALJ found that Plaintiff had medical impairments that included a history of cardiomyopathy, anxiety, and tremors 20 CFR § 404.1521 *et seq*. However, the ALJ determined that Plaintiff's impairments or combination of impairments were not severe because they did not limit her ability to perform basic work related activities for 12 consecutive months. *Id*.

The ALJ found that Plaintiff had a history of cardiomyopathy. PageID.39. A July 2008, cardiac catheterization showed normal coronary function. Plaintiff's cardiologist believed that Plaintiff's stress and chest pain were due to issues with her family business. PageID.253. Further, treatment notes from June 2010, showed that Plaintiff's tremors were stable, and August 2009, notes showed that tremors and anxiety were better with medication. PageID.40. The ALJ noted that there was little medical evidence to support Plaintiffs' claim between September 24, 2010, and September 30, 2012.

Plaintiff was treated for a cough, bronchitis, and sinusitis in November of 2010, and May of 2011. No cardiac, anxiety, or tremor issues were noted at these medical visits. PageID.40. Plaintiff was seen on March 5, 2012, and it was noted that her anxiety and stress increased with her 90-year old father suffering with dementia living at her home, while she is providing him care. PageID.394-395. Plaintiff's anxiety was being controlled with medication. *Id.* In 2013, Plaintiff sought treatment in April and November. Her anxiety and cardiomyopathy were stable and her anxiety was better with medication. Plaintiff sought treatment in November

for tremors, but she declined to restart treatment, and declined a neurological referral. PageID.444-445.

The ALJ found that Plaintiff's claim of disability was not credible based upon the medical evidence and based upon Plaintiff's reported activities which were consistent with capacity for work. The ALJ concluded that Plaintiff stopped working because of a hostile takeover of the business where she worked and not because of her impairments. Plaintiff looked for work and took care of her parents. Plaintiff stated that she could not work in 2010 because of her tremors. The ALJ determined that Plaintiff's impairments of cardiomyopathy and tremors were not severe.

The ALJ found no evidence that Plaintiff had sought treatment from a mental health professional for anxiety. Plaintiff's diagnosis and medication came from primary health care physicians. The ALJ considered the four broad functional areas for evaluating mental disorders known as "paragraph B" criteria. 20 CFR, Part 404, SubpartP, Appendix 1. Plaintiff had no limitations in activities of daily living as she reported she was able to prepare meals, clean, sweep, do laundry, walk, drive, shop, read, visit with others, and care for her personal needs. Plaintiff had no limitations with social functioning, and mild limitations in the area of concentration, persistence, or pace. The Plaintiff had reported some difficulty with completing tasks and concentration, but was able to follow instructions. Plaintiff did not experience episodes of extended periods of decompensation. The ALJ concluded that Plaintiff's reported anxiety was mainly due to stress from home and that her stress was medically controlled. The ALJ concluded that Plaintiff's anxiety caused no more than a mild limitation that could not limit Plaintiff's ability to perform basic work activities. The ALJ concluded that Plaintiff could not be considered

5

disabled as defined by the Social Security Act at any time between September 24, 2010, and September 30, 2012.

Plaintiff argues that the ALJ erred because he failed to rely upon either an examining physician or non-examining physician. Plaintiff argues that the ALJ should not have made medical decisions without supporting evidence and that the Social Security Administration should have ordered a consultative medical examination. Plaintiff argues that the ALJ erred by failing to find her impairments severe. Plaintiff states that the ALJ seemed to find that since her tremors were stable, they were not severe. Plaintiff complains that the ALJ never defined "stable" and that a finding of "stable" raises more questions than answers. Plaintiff argues that SSR 96-3 requires that the ALJ find Plaintiff's impairments severe and that the ALJ should have proceeded to Step III of the analysis. Plaintiff asserts that her examining physician Dr. Newhouse, MD found that her impairments were severe. Finally, Plaintiff argues that the ALJ failed to properly consider Plaintiff's anxiety by simply concluding that there existed no medical records to show that Plaintiff was ever treated by a mental health care professional. Plaintiff argues that the ALJ committed substantial error and that the ALJ's findings are not supported by the record.

The mere existence of an impairment, even a severe one, will not entitle Plaintiff to disability benefits unless the impairment prevents her from returning to past work or any other substantial gainful activity existing in the national economy considering her age, education and work experience. 42 U.S.C. § 423(d)(2)(A); 20 C.F.R. § 404.1505. A claimant's subjective allegations of disabling symptoms are insufficient by themselves to support a claim for benefits, *see Buxton v. Halter,* 246 F.3d 762, 773 (6th Cir. 2001), *Sizemore v. Secretary of Health and Human Services,* 865 F.2d 709, 713 (6th Cir.1988), and the symptoms must be substantiated by

6

some objective clinical or laboratory findings.  *Hurst v. Secretary of Health and Human Services,* 753 F.2d 517, 519 (6th Cir.1985); *see also* 20 C.F.R. §§ 404.1529 and 416.929.

It not the ALJ's burden to seek out medical opinions to prove or disprove a disability claim.  *Brown v. Comm'r of Soc. Sec.,* 602 F.App'x 328, 331 (6th Cir. 2015).  Rather, it is the Plaintiff's obligation to provide evidence to support her claim of disability.  20 CFR § 404.1512(c).  The medical evidence in this case has not confirmed the presence of a disabling impairment.  Contrary to Plaintiff's conclusions, the ALJ did not play doctor in this case.  Rather, the ALJ determined that the medical evidence did not support Plaintiff's claim of disability and the evidence presented was inconsistent with Plaintiff's testimony at the hearing.

Plaintiff points to the medical records from Dr. Robert Newhouse, the state agency psychologist, who Plaintiff argues concluded that Plaintiff's impairments were severe.  At PageID.92, the Impairment Diagnosis Section lists Cardiomyopathy, other disorders of the nervous system, and anxiety disorders as severe.  However, the form also indicates that there is insufficient evidence to substantiate the presence of an anxiety disorder and that the Plaintiff appears stable with medications.  PageID.93.  There was insufficient evidence to assess the credibility of Plaintiff's claims.  PageID.94.  As a result, the determination was made that the claimant was not disabled.  PageID.95.  The report concludes:

> In order to be entitled for benefits, your condition must be found to be severe prior to 09/30/2012, when you were last insured for disability benefits.  The evidence in [the] file is not sufficient to fully evaluate your claim and the evidence needed cannot be obtained.  We have determined your condition was not disabling on any date through 09/30/2012, when you were last insured for disability benefits.  In deciding this, we considered the medical records, your statements, and how your condition affected your ability to work.

PageID.95.

Plaintiff argues that the ALJ erred by basing his decision on the conclusion that Plaintiffs' cardiomyopathy and tremors were stable. That is not a fair interpretation of the ALJ's opinion. The ALJ considered the medical record in the entirety, and specifically noted that the objective medical findings "between September 24, 2010 and September 30, 2012, have been minimal at most." PageID.40. The ALJ concluded that Plaintiff's medical impairments could have expected to produce the alleged symptoms. However, it was Plaintiff's lack of medical evidence to support her disability when considered in light of her reported daily activities that supported the conclusion that Plaintiff was not disabled. Further, the ALJ carefully considered Plaintiff's claim of anxiety and gave the Plaintiff the benefit of the doubt by concluding that her medically determinable mental impairment caused no more than a "mild' limitation. The ALJ's conclusion that Plaintiff's physical and mental impairments considered singly and in combination did not significantly limit the Plaintiff's ability to perform basic work activities is supported by the evidence. As a result, there is substantial evidence in the record that supports the Commissioner's decision that Plaintiff is not disabled as defined by the Social Security Administration.

Accordingly, the decision of the Commissioner is AFFIRMED and Plaintiff's request for relief is DENIED.

Dated:     September 16, 2016              */s/ Timothy P. Greeley*
                                           TIMOTHY P. GREELEY
                                           UNITED STATES MAGISTRATE JUDGE